# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| URBAN 8 FOX LAKE CORPORATION, URBAN 8 ZION CORPORATION, | ) ) ) | |
| Plaintiffs, | ) ) | No. 18-cv-6109 |
| v. | ) ) | Judge Thomas M. Durkin |
| NATIONWIDE AFFORDABLE HOUSING FUND 4, LLC, SCDC, LLC, WENTWOOD CAPITAL ADVISORS, LP, | ) ) ) ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

Urban 8 Fox Lake Corporation and Urban 8 Zion Corporation partnered with defendants Nationwide Affordable Housing Fund 4, LLC ("Nationwide") and SCDC, LLC ("SCDC") to invest in low-income housing tax-credit projects. Defendant Wentwood Capital Advisors, LP ("Wentwood") served as the asset manager for those defendants. The partnership soured, and Plaintiffs brought this action for breach of the partnership agreements, breach of a settlement agreement, breach of the statutory duties of good faith and fair dealing, and tortious interference, as well as a declaratory judgment claim regarding the agreements.[1] Defendants have moved to dismiss under Fed. R. Civ. P. 12(b)(2) and 12(b)(6). For the following reasons, Defendants' motion is granted as to Count IV(2) and denied in all other respects.

---

[1] The Court has subject matter jurisdiction based on diversity. Plaintiffs are citizens of Illinois, while Defendants are all citizens of states other than Illinois (primarily Texas and Ohio). *See* R. 26 ¶ 27; R. 48. The amount in controversy exceeds $75,000. R. 1 ¶ 27.

## BACKGROUND

In 2000, the Urban Fox Lake Limited Partnership and Urban Zion Limited Partnership (the "Partnerships") were formed to acquire, rehabilitate, develop, own, and operate affordable housing developments in Illinois for elderly low-income residents (the "Projects"). R. 4 ¶¶ 1, 5. In 2001, Plaintiffs entered into partnership agreements with Nationwide and SCDC (through their predecessors) for the operation of the Partnerships. *Id.* ¶¶ 3, 7. Plaintiffs operated the Projects in compliance with the low-income housing tax credit program and Nationwide received numerous tax credits and other economic benefits because of the program. *Id.* ¶ 13. In exchange, Plaintiffs were granted an option to purchase Nationwide and SCDC's interests in the Partnerships at the end of a 15-year compliance period governed by the program. *Id.* ¶ 30. Plaintiffs timely exercised their options at the end of the compliance period. *Id.* ¶¶ 46-47.

In or around 2012, before the compliance period expired, Wentwood became the asset manager for Nationwide and SCDC. Afterwards, a dispute arose between Wentwood and Plaintiffs, and the parties (including all three Defendants) entered into a settlement agreement on January 25, 2017. *Id.* ¶ 44, Ex. C. Among other things, the settlement agreement required Defendants to "take all steps required to close on the purchase [pursuant to the options] in a timely and expeditious manner, consistent with [the partnership agreements]." *Id.* at 38. Defendants now refuse to sell their limited interests in the Partnerships in breach of the partnership and settlement

agreements. *Id.* ¶ 17. Plaintiffs allege that Defendants also refuse to pay for necessary repairs at the Projects for the benefit of residents. *Id.* ¶ 68.

Plaintiffs bring claims for breach and anticipatory breach of the partnership agreements against Nationwide and SCDC (Counts I and II); breach of the settlement agreement against all Defendants (Count III); violation of the good faith and fair dealing provision of 805 ILCS § 215/305 against Nationwide and SCDC (Count IV(2)[2]); and tortious interference with the partnership agreements against Wentwood (Count V). Plaintiffs also seek a declaratory judgment against all Defendants under the partnership agreements and the settlement agreement (Count IV(1)).

Defendants have moved to dismiss portions of the complaint on three grounds. First, Wentwood argues the Court cannot exercise personal jurisdiction over it. Second, Wentwood argues that even if the Court could exercise personal jurisdiction, the claims regarding Wentwood fail to state a claim for relief. Finally, Nationwide and SCDC seek to dismiss Count IV(2) for failure to state a claim. The Court will address each argument in turn.

## ANALYSIS

### I. Personal Jurisdiction over Wentwood

A challenge to a court's exercise of personal jurisdiction is made under Federal Rule of Civil Procedure 12(b)(2). "Federal courts ordinarily follow state law in determining the bounds of their jurisdiction over persons." *Walden v. Fiore*, 571 U.S.

---

[2] Plaintiffs' complaint contains two counts titled "Count IV." They will be referred to as Count IV(1) and Count IV(2) based on the order in which they appear in the complaint.

3

277, 283 (2014) (quoting *Daimler AG v. Bauman*, 571 U.S. 117 (2014)). The Illinois long-arm statute requires nothing more than the standard for federal due process: that the defendant have sufficient contacts with the forum state "such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Brook v. McCormley*, 873 F.3d 549, 552 (7th Cir. 2017) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)). While a complaint need not include facts alleging personal jurisdiction, once personal jurisdiction is challenged, the plaintiff has the burden of proving personal jurisdiction. *Northern Grain Mktg., LLC v. Greving*, 743 F.3d 487, 491 (7th Cir. 2014). When the court rules on the motion without a hearing, the plaintiff need only establish a *prima facie* case of personal jurisdiction. *Purdue Research Found. v. Sanofi–Synthelabo, S.A.*, 338 F.3d 773, 782 (7th Cir. 2003).[3]

There are two types of personal jurisdiction. General jurisdiction exists when the party's affiliations with the forum state "are so constant and pervasive as to render [it] essentially at home" there. *Daimler,* 571 U.S. 117, 122 (2014). Plaintiffs have not asserted that this Court may exercise general jurisdiction over Wentwood, so the Court considers only specific jurisdiction. Specific jurisdiction grows out of "the relationship among the defendant, the forum, and the litigation." *Walden,* 571 U.S. at 284. This type of jurisdiction requires that "(1) the defendant [] purposefully availed himself of the privilege of conducting business in the forum state or

---

[3] Wentwood has submitted an affidavit of its president, George David Sebastian (R. 25), but the Court finds the declarations in that affidavit irrelevant to the issues regarding jurisdiction here.

4

purposefully directed his activities at the state; (2) the alleged injury must have arisen from the defendant's forum-related activities; and (3) the exercise of jurisdiction must comport with traditional notions of fair play and substantial justice." *Felland v. Clifton*, 682 F.3d 665, 673 (7th Cir. 2012).

As a preliminary matter, as Wentwood concedes (*see* R. 23 at 12), the Court has jurisdiction over Wentwood on Plaintiffs' claim for breach of the settlement agreement, because the settlement agreement contains a governing law provision. Under that provision, the parties agreed that the settlement agreement would be governed by the laws of Illinois in the state or federal courts of Illinois. *See* R. 4 at 41. The provision extends to any suit for the "implementation or enforcement" of the settlement agreement. *Id.* Wentwood has thus waived any personal jurisdiction argument with respect to the breach of the settlement agreement claim (Count III). *See IFC Credit Corp. v. Aliano Bros. Gen. Contractors*, 437 F.3d 606, 610 (7th Cir. 2006) (forum selection clauses generally constitute implied waivers of objections to both personal jurisdiction and venue in the selected forum). Wentwood also has waived personal jurisdiction as to the declaratory judgment claim (Count IV(1)), as it seeks to "implement and enforce" the settlement agreement.[4] And, because the Court can exercise personal jurisdiction over Wentwood with respect to two of the claims

---

[4] In relevant part, the declaratory judgment claim asks the Court to find that "Defendants breached their contractual obligations, including their duty of good faith and fair dealing, to sell the Limited Partners' interests to the General Partners by unjustifiably delaying and refusing to either appoint an appraiser or agree to accept the General Partners' appraisals, as required by the settlement agreement." R. 4 ¶ 105.

brought against it, it can exercise pendent personal jurisdiction over Wentwood with respect to any claim that arises out of a common nucleus of facts. *See Rice v. Nova Biomedical Corp.*, 763 F. Supp. 961, 966 (N.D. Ill. 1991); *Robinson Eng'g Co. Pension Plan & Trust v. George*, 223 F.3d 445, 450 (7th Cir. 2000) ("In our view, the same logic that lies behind the supplemental jurisdiction statute for purposes of subject matter jurisdiction, 28 U.S.C. § 1367, supports the application of supplemental personal jurisdiction over claims that are properly before the court under § 1367.").[5] The Court finds the tortious interference claim arises from the same common nucleus of facts as the breach of the settlement agreement and the declaratory judgment claims. *See* R. 4 ¶ 120 (as to tortious interference, Plaintiffs allege "Wentwood intentionally and unjustifiably caused the Limited Partners to breach the Partnership Agreements by, among other things, delaying and refusing to promptly appoint a qualified appraiser to determine the fair market value of the Project, and preventing the Special Limited Partner from facilitating each General Partners' exercise of its Purchase Option.").[6]

---

[5] Wentwood does not address pendent personal jurisdiction and therefore has waived any arguments against its application.

[6] Even if the Court could not exercise pendent personal jurisdiction, the Court easily concludes that there is sufficient connection between Wentwood, Illinois, and the tortious interference claim to give rise to personal jurisdiction over it. The crux of Plaintiffs' complaint is that Defendants entered into partnerships with Illinois entities (*i.e.* the Plaintiffs) to service and control projects located in Illinois. Wentwood managed those Illinois projects on behalf of the other two Defendants, and while doing so, tortuously interfered with the Illinois-based partnerships. Interfering with contracts based in Illinois regarding Illinois properties, and affecting Illinois residents, connects Wentwood to Illinois in a meaningful way to justify the exercise of personal jurisdiction. Further, there is no burden on Wentwood in defending itself in this forum, particularly when Wentwood will already defend itself here on Plaintiffs' remaining claims and will likely be called to participate in discovery as a party to Plaintiffs' claims against the remaining Defendants. "It would be

6

Finally, for the first time on reply, Wentwood argues that the Court cannot exercise personal jurisdiction over it because of the fiduciary shield doctrine. "Arguments made for the first time in a reply brief are waived." *United States v. Adamson*, 441 F.3d 513, 521 n.2 (7th Cir. 2006). *Moorehead v. Deutsche Bank AG*, 2011 WL 4496221, at *5 (N.D. Ill. Sept. 26, 2011). In any event, the doctrine does not deprive the Court of personal jurisdiction over Wentwood. The fiduciary shield doctrine "denies personal jurisdiction over an individual whose presence and activity in the state in which the suit is brought were solely on behalf of his employer or other principal." *Rice v. Nova Biomedical Corp.,* 38 F.3d 909, 912 (7th Cir. 1994). That is not the case here. Plaintiffs allege Wentwood acted in its own financial interest in managing the properties, breaching the contracts, and tortuously interfering with the partnership agreements. *See, e.g.*, R. 4 ¶ 52 (Plaintiffs allege that Wentwood caused Nationwide and SCDC to breach their obligations under the partnership agreements to "reinterpret and inflate the 'Fair Market Value,' inflate the ILP's capital account, and [misconstrue] the terms of the [partnership agreements] in an attempt to maximize its own cash return on the impending capital transactions," and refused to account for or approve repairs to increase its own distributions). There is no indication from the complaint that Wentwood's actions were directed by Nationwide or SCDC to allow for invocation of the fiduciary shield doctrine.

---

unreasonable to expect Plaintiffs to file separate lawsuits to give [Wentwood] . . . the privilege of defending this litigation in its home state when jurisdiction is otherwise proper in Illinois. That would be cumbersome and impractical." *Walls v. VRE Chicago Eleven, LLC,* 2018 WL 4591715, at *5 (N.D. Ill. Sept. 25, 2018).

## II. 12(b)(6) Motion to Dismiss

A Rule 12(b)(6) motion challenges the "sufficiency of the complaint." *Berger v. Nat. Collegiate Athletic Assoc.*, 843 F.3d 285, 289 (7th Cir. 2016). A complaint must provide "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), sufficient to provide defendant with "fair notice" of the claim and the basis for it. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). This standard "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). While "detailed factual allegations" are not required, "labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. The complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). "'A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Boucher v. Fin. Sys. of Green Bay, Inc.*, 880 F.3d 362, 366 (7th Cir. 2018) (quoting *Iqbal*, 556 U.S. at 678). In applying this standard, the Court accepts all well-pleaded facts as true and draws all reasonable inferences in favor of the non-moving party. *Tobey v. Chibucos*, 890 F.3d 634, 646 (7th Cir. 2018).

### A. Breach of Settlement Agreement and Declaratory Judgment Claims against Wentwood (Counts III and IV(1))

Wentwood first argues that the breach of the settlement agreement and the corresponding declaratory judgment claims against it should be dismissed because Wentwood has no obligations under the settlement agreement. Specifically,

8

Wentwood argues the settlement agreement does not specifically direct "Wentwood Capital Advisors, LP" to take any actions, as opposed to the broadly defined "Wentwood" in the settlement agreement. R. 23 at 12-13. Wentwood further contends that the absence of "explicit delegations of duties to Wentwood" means Wentwood "cannot act without further instruction and authority" from its principals, Nationwide and SCDC. *Id.* at 13. Wentwood's argument does not comport with the plain language of the settlement agreement.

The settlement agreement was entered into on January 25, 2017 between Plaintiffs and Nationwide and SCDC on the one hand, and Wentwood on the other. R. 4 at 29 ("This settlement agreement and Release ('Agreement') is made as of January 25, 2017 (the 'Effective Date') and entered into among the 'GPs' (defined below) and Wentwood (defined below)."). "Wentwood" is defined in the settlement agreement to mean "Wentwood Capital Advisors, L.P., a Texas limited partnership" (*i.e.* the Defendant in this case). *Id.* at 30. The agreement also states that for purposes of the agreement, "Wentwood" includes "Nationwide Affordable Housing Fund 4, LLC, . . . which Wentwood represents to be the Investor Limited Partner ("ILP") to each of the LPs." *Id.* The settlement agreement defines the "Parties" to the settlement agreement as "the GPs and Wentwood." *Id.* David Sebastian, Wentwood's President, signed on behalf of all Defendants. *Id.* at 43.

The settlement agreement obligates Wentwood in at least two ways. First, it obligates Wentwood to "promptly [] appoint an appraiser . . . or provide the GP with written notice that it accepts the Appraisal Research Counselors appraisals." *Id.* at

9

38, § 7. It also requires "the Parties" "to take all steps required to close on the purchase(s) in a timely and expeditious manner, consistent with the terms of the last two sentences of Section 6.16." *Id*. Wentwood's arguments that it can only act through its principals' instructions and authority are not supported by the contract and cannot serve as a basis to dismiss Wentwood. Wentwood's motion to dismiss Counts III and IV(1) is denied.

### B. Tortious Interference Claim against Wentwood (Count V)

Wentwood next argues that Plaintiffs' claim for tortious interference should be dismissed because Wentwood, as the agent of Nationwide and SCDC, enjoys a "conditional privilege" precluding it from liability. R. 23 at 11-13.

The elements of the tort of intentional interference with contract in Illinois are: "(1) the existence of a valid and enforceable contract between the plaintiff and another; (2) the defendant's awareness of this contractual relation; (3) the defendant's intentional and unjustified inducement of a breach of the contract; (4) a subsequent breach by the other, caused by the defendant's wrongful conduct; and (5) damages." *HPI Health Care Servs., Inc. v. Mt. Vernon Hosp., Inc.*, 545 N.E.2d 672, 676 (Ill. 1989). The Illinois Supreme Court has recognized a privilege in tortious interference cases where the interest that the defendant was acting to protect is one that the law deems to be of equal or greater value than the plaintiff's contractual rights. *Id*. at 677. Illinois therefore grants a privilege to managers or corporate officers that protects them from personal liability for their decisions made on behalf of the corporation. *TABFG, LLC v. Pfeil*, 746 F.3d 820, 825 (7th Cir. 2014) ("Because the interests of

corporate officers, directors, and shareholders are sufficiently aligned with those of the company, they generally cannot be liable in tort when they interfere with the company's contract for the benefit of the company.").

However, the privilege is conditional, and does not apply if "the defendant's conduct was unjustified or malicious," or "totally unrelated or even antagonistic to the interest which gave rise to defendant's privilege." *HPI*, 545 N.E.2d at 678. "The term 'malicious,' in the context of interference with contractual relations cases, simply means that the interference must have been intentional and without justification." *Id.* at 677. For example, a hospital management company would not be justified in inducing a breach of contract if it acted "solely for the management company's gain, or solely for the purpose of harming the plaintiff, since such conduct would not have been done to further the hospital's interests." *Id.* at 678. *See also TABPG*, 746 F.3d at 825 ("corporate officers are not justified in acting solely for their own benefit or solely in order to injure the plaintiff because such conduct is contrary to the best interests of the corporation").

Here, Plaintiffs allege Wentwood's conduct was both intentional and unjustified. Specifically, they contend Wentwood caused Nationwide and SCDC to breach their obligations under the partnership agreements because Wentwood sought to "reinterpret and inflate the 'Fair Market Value,' inflate the ILP's capital account, and [misconstrue] the terms of the partnership agreements in an attempt to maximize its own cash return on the impending capital transactions." R. 4 ¶ 52. Plaintiffs also allege (through general inferences) that Wentwood's efforts to inflate

11

Nationwide's capital account benefit only Wentwood because Nationwide invested in the Projects to receive tax credits and other tax benefits, and it neither expected nor desired to receive cash distributions following the end of the Compliance Period. *Id.* ¶¶ 32, 35. Plaintiffs further allege that Wentwood refuses to appoint an appraiser in order to "receiv[e] benefits for itself while depriving [Plaintiffs] of their bargained-for benefits"; "insists on including real estate tax reserves as an asset attributable to its benefit" in calculating the purchase price without considering the corresponding current tax liability incurred; and insists that costs of required repairs be excluded from the calculation of the Projects' fair market value, while also insisting that the replacement reserves be counted as an asset to its benefit because it receives certain distributions based on fair market values and other capital accounts. *Id.* ¶¶ 52, 60, 64, 66. At this stage in the suit, Plaintiffs have sufficiently alleged Wentwood acted for its own benefit rather than the interests of Nationwide and SCDC. Wentwood is not shielded from liability by any privilege.

### C. 805 ILCS § 215/305 (Count IV(2))

Finally, Nationwide and SCDC seek to dismiss Plaintiffs' claim alleging they breached their obligations of good faith and fair dealing as limited partners under 805 ILCS § 215/305. Section 305 provides that a "limited partner shall discharge the duties to the partnership and the other partners . . . consistently with the obligation of good faith and fair dealing." But under Illinois law, "the covenant of good faith and fair dealing is not an independent source of duties for the parties to a contract," and cannot serve as a separate cause of action. *Baxter Healthcare Corp. v. O.R. Concepts, Inc.,* 69 F.3d 785, 792 (7th Cir. 1995) (interpreting Illinois law); *LaSalle Bank Nat'l*

12

*Assoc v. Paramont Properties*, 588 F.Supp.2d 840, 853 (N.D. Ill. 2008) ("[B]reach of the duty of good faith and fair dealing is not an independent cause of action but is merely a basis for a breach of contract action."). Plaintiffs have already incorporated a breach of the duty of good faith and fair dealing against Nationwide and SCDC in their breach of contract claim. *See* R. 4 ¶ 77. The motion to dismiss Count IV(2) is granted.

## CONCLUSION

For the foregoing reasons, Defendants' motion (R. 23, 24) is granted as to Count IV(2) and denied in all other respects.

ENTERED:

*Thomas M Durkin*
_____

Dated: December 10, 2018

Honorable Thomas M. Durkin
United States District Judge