**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| URBAN 8 FOX LAKE CORPORATION, ) | | |
| URBAN 8 ZION CORPORATION, ) | | |
| ) | | |
| Plaintiffs, ) | No. 18 C 6109 | |
| ) | | |
| v. ) | Magistrate Judge Jeffrey Cole | |
| ) | | |
| NATIONWIDE AFFORDABLE HOUSING ) | | |
| FUND 4, LLC, SCDC, LLC, WENTWOOD ) | | |
| CAPITAL ADVISORS, LP, ) | | |
| ) | | |
| Defendants. ) | | |

**MEMORANDUM OPINION AND ORDER**

On October 22, 2019, Judge Rowland referred to me [Dkt. # 116] the defendants' contested motion for a protective order. [Dkt. #76]. The motion has a somewhat checkered history, much like this case. *See, e g.,* [Dkt. #106]. It was filed nearly eight months ago and was fully briefed as of April 5, 2019. Shortly thereafter, Judge Durkin – presumably at the parties' request – stayed all discovery pending his resolution of the cross-motions for partial summary judgment. [Dkt. #87]. The defendants' motion apparently came under the umbrella of that stay, as it was, in essence, a discovery motion.

The parties had fully briefed their cross motions for summary judgment by February 25, 2019 [Dkt. #75], and Judge Durkin held lengthy oral arguments. [Dkt. ## 87;106, at 7]. The issue that formed the basis for the motions was, as the parties told Judge Durkin, the sale preparation fee, which was the key issue in the case. [Dkt. # 106, at 6-7, 8]. Judge Durkin "put a significant amount of time into understanding the complexities of this deal and understanding the contract . . . ." [Dkt.

#106, at 8-9]. He had, however, held off on issuing a written decision because the parties were attempting to settle. [Dkt. #106, at 8-9]. But, he did indicate to the parties that he was going to rule in the plaintiff's favor – more on that later. [Dkt. #106, at 7]. As the parties' settlement efforts failed, as of the end of May, Judge Durkin told the parties a written ruling would be coming. [Dkt. #106, at 8-9].

But, it was not to be. On August 22, 2019, the case was reassigned to Judge Rowland under the court's automatic reassignment system. [Dkt. #109]. In their Initial Joint Status Report to Judge Rowland, the parties forthrightly conceded that on May 10th, Judge Durkin had told "the parties of his ruling in Plaintiffs' favor on the cross-motions for summary judgment and that he would be issuing a written ruling in Plaintiffs' favor on the cross-motions for summary judgment, . . . ." [Dkt. # 114, at 4]. Indeed, in the interest of judicial efficiency, barely a week after the case was sent to Judge Rowland, plaintiff's counsel wrote to the Executive Committee asking that the case remain with Judge Durkin. [Dkt. # 110]. Defendants' counsel wrote to the Executive Committee as well, quoting an email exchange with plaintiffs' counsel in which defendants' counsel suggested that this type of thing is not uncommon, and there were likely a number of cases reassigned to Judge Rowland in which "a particular judge has made a significant time investment . . . ." [Dkt. # 111]. Of course, that's not the same as a case where a judge has told the parties how he would be ruling on summary judgment and was working on the Opinion. But as defendants were the losers-to-be, their take is not surprising. In any event, that was two months ago, and the Executive Committee has not responded to either side. [Dkt. # 114].

## I.

This prologue is by way of explaining why, for a nearly eight-month-old motion, some things

2

that might ordinarily be preliminary housekeeping matters are necessary. Given all that was transpiring, understandably, no one apparently had found it necessary to resolve the defendants' motion until now. First, the defendants state that they "seek a protective order in the form of Exhibit 1 to the Declaration of Marc A. Al, filed herewith, . . . ." [Dkt. #76, at 4]. That document conforms to Local Rule 26.2's Model Form in terms of delineating the category of "confidential information," [Exhibit 1, Par. 2], but there is no delineation of what a party may designate as "attorney's eyes only," and that is the main sticking point here. Seventh Circuit case law simply does not allow for an open-ended "attorney's eye only" category, the scope of which is to be decided on the whim of counsel. *See, e.g., Citizens First Nat. Bank of Princeton v. Cincinnati Ins. Co.*, 178 F.3d 943, 945 (7th Cir. 1999). *See also Prater v. Weber Trucking Co., Inc.*, 2019 WL 2106644, at *2 (S.D. Ind. 2019)("Discrete closed categories of information must be explicitly delineated to satisfy the Seventh Circuit's requirements for protective orders. (Collecting cases)").

Thus, as drafted, the defendants' proposed Order cannot be entered, and their motion is denied. The parties may attempt to hammer out a suitable version, or defendants may go back to the drawing board and provide a category limiting what "attorney's eyes only" documents can be. In so doing, the defendant should, of course, be prepared to support the delineation with relevant case law, as they will be back here being opposed by plaintiff. Arguments unsupported by applicable case law are deemed waived. *Blow v. Bijora*, 855 F.3d 793,805 (7th Cir. 2017); *Massuda v. Panda Exp., Inc.*, 759 F.3d 779, 783-784 (7th Cir. 2014). It should be noted that in the only case from this district the defendant has cited upholding an "attorney's eyes only" designation for financial records, the parties were direct competitors in the synthetic turf industry. *See Fieldturf Int'l, Inc., Fieldturf, Inc. v. Triexe Mangement Grp., Inc.*, 2004 WL 866494, at *3 (N.D. Ill. Apr. 16, 2004). They were not, as

3

the defendants tell us here, "parties to partnership agreements." [Dkt. #76, at 1]. They were not, as the defendant hedges later, "adverse parties in numerous investments" [Dkt. #75, at 5], whatever that means. It is an assertion the defendants neither explain nor try to support.

Once that is done, in compliance with applicable law, and only then, the issue may become what documents defendants propose to designate as "confidential" or "attorneys' eyes only." In this regard, plaintiff is mistaken that, categorically, there can be no documents ever designated as "attorney's eyes only" in this case. We just don't know that. Now, the parties are merely arguing in the abstract about nebulous categories of financial information [Dkt. # 76, at 4-5; 83, at 3-5], so no ruling can possibly be made as yet. Nor should one be attempted.

Additionally, Local Rule 37.2 applies to disputes over document designations, and Paragraph 9 of the Model Order will have to be a part of the eventual Protective Order, and the parties will have to adhere to it and follow Local Rule 37.2 *in good faith*. The requirement is not without significant meaning, although that meaning is often diluted as attorneys tend to pay it no more than lip service. But to do so constitutes a significant omission and one that will not be overlooked. Indeed, that kind of omission is contrary to the very purpose of the discovery rules, which envision a high degree of attorney cooperation resulting in hopefully a minimum of necessary judicial involvement. *See, generally, Motorola Sols., Inc. v. Hytera Commc'ns Corp.*, 365 F. Supp. 3d 916, 921 (N.D. Ill. 2019)("While they 'conferred telephonically, all this consisted of was [plaintiff] asking [defendant] if it still opposed forensic inspection and [defendant] saying it did."); *Chicago Reg'l Council of Carpenters Pension Fund v. Celtic Floor Covering, Inc.*, 316 F.Supp.3d 1044, 1046 (N.D. Ill. 2018)("An ultimatum on one side, met with steadfast defiance on the other, is not a good faith discussion.")*; Gunn v. Stevens Sec. & Training Servs., Inc.*, 2018 WL 1737518, at *3 (N.D. Ill.

4

2018)("A party that steadfastly maintains a position without support is not engaging in a good faith discussion."); *Infowhyse GmbH v. Fleetwood Grp.*, 2016 WL 4063168, at *1 (N.D. Ill. 2016)("A single phone call in three months regarding a dispute that has engendered nearly 500 pages of briefs and exhibits doesn't come close to sufficing.").

## II.

Second, defendants want to "clawback" two documents which they indicate are "Exhibits 3A and 4A to the Declaration of Marc A. Al (AMTX-Urban 0000206-0000209 and AMTX-Urban 0001495=0001499)." According to defendants, they want to clawback, or redact, "comments made by Ms. Holtz, an employee and Vice President-Asset Manager of Wentwood Capital Advisor's in-house counsel, Brian Brandstetter . . . ." Defendants argue that "Ms. Holtz's thoughts . . . are attorney-client privileged when addressed to Mr. Brandstetter as part of a dialogue about Plaintiff's position . . . ." [Dkt. # 76]. The document defendants have provided as Exhibit 3A – the one inadvertently produced – is four pages, the text of which is nearly completely redacted. As to the page or so without redactions, it is an email from Plaintiff's President, Andrew Delman, to Ms. Holtz. According to defendants, Ms. Holtz added comments to Mr. Delman's email, and sent it along to in-house counsel. Those comments were inadvertently not redacted. After review of the email and inserted comments, without more from defendants and due to the wholesale redactions regarding the context of the annotated email, these comments might as easily have been made for business purposes as to gain legal advice. The former is not privileged. *See Rehling v. City of Chicago*, 207 F.3d 1009, 1019 (7th Cir. 2000)(". . . attorney-client privilege is limited to situations in which the attorney is acting as a legal advisor . . . ."). Indeed, Mr. Brandstetter tells us that, in this context, he was determining "the financial implications of various scenarios." [Dkt. # 77, ¶ 6].

5

Moreover, comments like "such a nice guy to decide to follow the documents now" or "his way of saying, "ha ha! Look at what all of your diligence gets ya this time" cannot seriously be argued as necessary to the provision of any legal advice. *See United States v. Bey*, 772 F.3d 1099, 1101 (7th Cir. 2014)("Confidential communications between a client and her lawyer *for the purpose of* receiving legal advice are protected by the attorney-client privilege. (emphasis added)"). Communication must be for the purpose of obtaining legal advice. *Sandra T.E. v. S. Berwyn Sch. Dist. 100*, 600 F.3d 612, 618 (7th Cir. 2010). Defendants' claims of privilege here are clearly an overreach. Indeed, inappropriate privilege claims are, unfortunately, commonplace in modern litigation, and are often indiscriminately and improperly used "on documents that do not truly qualify for protection." *Towne Place Condo. Ass'n v. Philadelphia Indem. Ins. Co.*, 284 F.Supp.3d 889 (N.D. Ill. 2018). *See also Dietz & Watson, Inc. v. Liberty Mut. Ins. Co.*, 2015 WL 2069280, at *6 (E.D. Pa. 2015)*; Falin v. Condo. Ass'n of La Mer Estates, Inc.*, 2012 WL 760831, at *1 (S.D. Fla. 2012); *Employer's Reinsurance Corp. v. Clarendon Nat. Ins. Co.*, 213 F.R.D. 422, 430 (D. Kan. 2003).

Exhibit 4A appears to be Ms. Holtz's comments annotating an email from Jeffrey Wagner – plaintiff's counsel – to Mr. Brandstetter. But, based on the exhibit defendants have provided, Ms. Holtz's comments were sent to Mr. Wagner. So these could not have been intended as either confidential or to obtain legal advice from Mr. Brandstetter. Whatever opening comments might have been made by Ms. Holtz were redacted in what defendant identifies in the inadvertently produced version. Accordingly, defendant's motion for a clawback of these documents is denied. Defendants' motion to strike a portion of plaintiff's motion for summary judgment involving these two documents – the motion Judge Durkin apparently decided a couple of months ago – is also denied. As he reached a decision on the parties' motions as filed, Judge Durkin either didn't think

the documents were privileged, or didn't think they mattered.

### III.

The parties are also squabbling and have been for about a year as to whether two of defendants' documents ought to be produced in native format – as the plaintiff argues – or TIFF format – as the defendant has produced them. This is the type of thing that should require no court intervention and which, if the parties actually met and conferred *in good faith* ought to have been resolved long ago. The "default setting" under the Federal Rules of Civil Procedure is production of ESI in native format. Fed.R.Civ.P. 34(b)(2)(E)(ii). But parties can agree to other formats. Unfortunately, that was not going to happen here. Indeed, the stance plaintiff's counsel took on whether defendants could depart from this in the "meet and confer" phase of this dispute was not consistent with the spirit of Rule 37.2. Counsel wrote:

> You further suggest that Wentwood should not have to provide the spreadsheets in native format because Winthrop & Weinstine is engaged in more than one lawsuit against Wentwood or its affiliates. The fact that your client is an aggregator, predatory investor attempting to deprive general partners in LIHTC projects across the country of important rights and benefits does not provide justification for violating the Court's discovery rules.

[Exhibit 65]. Plaintiff's counsel went on to say the spreadsheets were very long and difficult to read. That's not a "good faith" position, and counsel is reminded that "few plaintiffs come to court with halos above their heads; fewer still escape with those halos untarnished." *CE Design Ltd. v. King Architectural Metals, Inc.*, 637 F.3d 721, 728 (7th Cir. 2011).

That being said, the defendants' rationale for producing the material in TIFF form is equally unacceptable. Defendants claim that, in native format, a number of irrelevant materials would be included. [Dkt. # 76, at 11]. But again, the default setting is native format and what the defendants

7

think might end up being relevant isn't part of the calculus in that determination. Defendants also indicate that the native format will not be as useful as a number of links no longer operate, and imbedded information may render calculations unreliable. But, plaintiff has chosen to steadfastly maintain its position that only native format is acceptable; the plaintiff will have to live with that decision and will not be allowed any additional discovery if problems arise with the native format of these two documents.

## IV.

Finally, with regard to the five dozen or so documents defendants claim are privileged, the defendants have submitted a "chart" [Dkt. #85] which, if it is meant to be a privilege log, is inadequate. While defendants' counsel may be intimately familiar with the players in this case, the court has no idea – and cannot gain sufficient information from the "chart" as to who is who, what they do, and so on. The description of the documents – which is necessary despite any *in camera* production as, again, the court is on the outside looking in, unlike defendants' counsel – is simply too sketchy to support any claim of privilege. As has been seen, even defendant's explanation of the two clawback documents was insufficient to provide the court with enough information to find that defendants had met their burden of establishing those documents were privileged. The "chart" is even less edifying.

A few examples will suffice to make the point. Exhibit 6 is described as follows: "document at issue is an analysis specifically put together for use by counsel in formulating the correspondence." The correspondence is said to be "an email from Tami Holtz to in-house counsel B. Brandstetter and business team members with input for correspondence to be sent by in-house counsel B. Brandstetter to Plaintiffs' President Andrew Delman." The document is actually nothing

more than a financial balance sheet. Defendants don't bother telling us who authored it but, even if an attorney did, how could it be legal advice? If a non-attorney prepared it, were they doing so to ask for legal advice? The "lead document" suggests it was prepared as part of *business* negotiations over a purchase option in a contract.

Exhibit 7 is over 400 pages long. Remarkably, about 200 pages of it are blank. More remarkably, Defendants describe it *exactly* as they describe the three-page balance sheet that is Exhibit 6: "The document at issue is an analysis specifically put together for use by counsel in formulating the correspondence." Exhibit 8 is similar. Hundreds of blank pages and those that aren't blank are lists of cities (sometimes with corresponding rate percentages but most often not), or dates. The document even includes a picture of a toilet! Privileged? Ridiculous. Obviously, little more need be said about the utility of defendants' "chart" and their claims that documents are privileged, at least as those claims are currently constituted. That's a none-too-subtle hint that the defendants should start revisiting those claims right now.[1]

But there is more. To make matters worse, the "chart" doesn't even match the exhibits the defendants have deposited for *in camera* review. The first document for review is Exhibit 5. It is AMTX-Urban 00000272-00000280. But, the first document listed on the chart is AMTX-Urban 00000206-00000209. The second document for review, Exhibit 6, is AMTX-Urban 0000285-00000288. The second document on the chart is AMTX-Urban 00001495-00001499. The third document for review, Exhibit, 7 is AMTX-Urban 0000289. The third document on the chart is AMTX-Urban 00000281-00000284. And so on. It is not the court's job to sift through hundreds

---

[1] Defendants are reminded that frivolous claims of privilege are subject to sanctions up to and including default judgment. Fed.R.Civ.P. 37(c)(1).

of pages of documents *and* attempt to match those documents against twenty-page list that seems to have been haphazardly compiled given how the defendants chose to compile their documents for *in camera* review. *See, e.g., Bunn v. Fed. Deposit Ins. Corp. for Valley Bank Illinois*, 908 F.3d 290, 297 (7th Cir. 2018)("As has become "axiomatic" in our Circuit, '[j]udges are not like pigs, hunting for truffles buried in the record.'"). "An advocate's job is to make it easy for the court to rule in his client's favor . . . ." *Dal Pozzo v. Basic Mach. Co.*, 463 F.3d 609, 613 (7th Cir. 2006). Defendants' counsel's submissions fall far short of that goal.

Accordingly, the defendants' motion for entry of their proposed protective order is denied. Their motion for clawback of the two documents and to strike portions of the plaintiff's summary judgment submissions is denied, as is their motion to produce two documents in TIFF format, with the proviso that plaintiff will be allowed no further discovery arising out of production in native format. Finally, if the defendants choose to pursue their claims of privilege as to the documents submitted *in camera,* they must, within seven days, file a privilege log that is compliant with Fed.R.Civ.P. 26(b)(5). *See, e.g., RBS Citizens, N.A. v. Husain*, 291 F.R.D. 209, 218 (N.D. Ill. 2013)(and collected cases). There will be no extensions of this timetable.

**ENTERED:** _____
**UNITED STATES MAGISTRATE JUDGE**

**DATE:** 11-13-19