# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| URBAN 8 FOX LAKE CORPORATION, ) | | |
| URBAN 8 ZION CORPORATION, ) | | |
| ) | | |
| Plaintiffs, ) | No. 18 C 6109 | |
| ) | | |
| v. ) | Magistrate Judge Jeffrey Cole | |
| ) | | |
| NATIONWIDE AFFORDABLE HOUSING ) | | |
| FUND 4, LLC, SCDC, LLC, WENTWOOD ) | | |
| CAPITAL ADVISORS, LP, ) | | |
| ) | | |
| Defendants. ) | | |

## MEMORANDUM OPINION AND ORDER

Defendants have made three recent submissions to the court – a letter, two binders full of documents, and what is captioned "Resubmission of Defendant's Privilege Log for Motion for Protective Order (Contested)." [Dkt. #121, 124]. Over eight months ago, on March 8, 2019, defendants asked the court to conduct an *in camera* review of about five dozen documents. The defendants claimed these documents were protected from discovery by the privilege. [Dkt. #76, at 8-10]. They *claimed* to have attached a "chart" to their motion that apparently was to serve as a privilege log describing the documents and stating why each was privileged. But, there was no chart attached to the motion. That only came about a month later, when defendants finally filed it, saying it had been inadvertently omitted. [Dkt. # 85]. In any event, the purportedly privileged documents deposited for *in camera* inspection were contained in five large, three-ring binders and occupied approximately 2,275 pages! If basic competent procedures were followed, the lawyers obviously had to look at the mass of documents before a privilege could properly be asserted. But that, apparently, is not what happened.

Luckily, due to the unfortunate history of this case – detailed in the Order of November 13th – the court did not analyze the overly broad collection of documents wrongly claimed to be privileged.[1]  Each hour needlessly spent on a dispute is an hour squandered. "Litigation is costly not only for the litigants but also for parties in other cases waiting in the queue for judicial attention." *Chicago Observer, Inc. v. City of Chicago,* 929 F.2d 325, 329 (7th Cir.1991). This is a problem that the Seventh Circuit has repeatedly adverted to. *See, e.g., Otto v. Variable Annuity Life Insurance. Co.,* 134 F.3d 841, 854 (7th Cir.1998); *Channell v. Citicorp Nat. Services, Inc.,* 89 F.3d 379, 386 (7th Cir.1996); *Szabo Food Service, Inc. v. Canteen Corp.,* 823 F.2d 1073, 1077 (7th Cir.1987).

The law demands that a legitimate claim of privilege can only be made after a document by document examination. *In re Grand Jury Proceedings*, 220 F.3d 568 (7th Cir. 2000). Consequently, by making the very large submission that the defendants initially made, they in effect were representing that such an examination had been conducted. Yet, now after eight months, defendants' counsel now suddenly tells the court he has "no idea what was delivered to [the court], nor do[es he] have any idea how this [submission of thousands of documents [in five huge binders] occurred." (Marc A. Al Letter of November 10, 2019).  Yet, counsel has now deposited a new set of documents totaling 570 pages for *in camera* inspection, which  occupy just two three-ring binders.  He asserts that he was not making a frivolously sweeping claim of privilege as to the 2,275 pages of documents.

---

[1]This case would seem to prove once again that excessive claims of privilege are unfortunately commonplace in modern litigation, and that they are often indiscriminately used "on documents that do not truly qualify for protection." *Towne Place Condo. Ass'n v. Philadelphia Indem. Ins. Co.*, 284 F.Supp.3d 889 (N.D. Ill. 2018). *See also Motorola Sols., Inc. v. Hytera Communs Corp.*, No. 17 C 1973, 2018 WL 1804350, at *1 (N.D. Ill. Apr. 17, 2018)*; Dietz & Watson, Inc. v. Liberty Mut. Ins. Co.*, 2015 WL 2069280, at *6 (E.D. Pa. 2015)*; Falin v. Condo. Ass'n of La Mer Estates, Inc.*, 2012 WL 760831, at *1 (S.D. Fla. 2012); *Employer's Reinsurance Corp. v. Clarendon Nat. Ins. Co.*, 213 F.R.D. 422, 430 (D. Kan. 2003).

Instead, counsel says he meant to claim the privilege as to only *two* binders of documents covering only about 570 pages. While claims of inadvertence are not uncommon, they need not to be taken at face value. *Union Switch & Signal Co. v. Louisville Frog, Switch & Signal Co.,* 73 F.2d 550, 552 (6th Cir. 1934); *Ah Quin v. Cty. of Kauai Dep't of Transp.*, 733 F.3d 267, 271 (9th Cir. 2013). The assertions made in the current motion is, I believe, inherently incredible, and no court is bound to credit an inherently incredible explanation. *See Anderson v. Bessemer City*, 470 U.S. 564, 575 84 L.Ed.2d 518 (1985)("the story itself may be so... implausible on its face that a reasonable factfinder would not credit it."). *See also' Geighy Chemical Corp. v. Allen*, 224 F.2d 110, 114, n.5 (5th Cir. 1955); *Northern Trust Company v. Garman*, 643 F.2d 1252, 1260 (7th Cir. 1980), *cert. denied*, 450 U.S. 910 (1981); *Kearney & Trecker Corp. v. Giddings & Lewis, Inc.*, 452 F.2d 579, 595 (7th Cir. 1971).

Although defense counsel apologizes for the claimed "mistake" [Dkt. ##121, 124], counsel suggests that this was somehow a result of some confusion on the court's part regarding the difference between documents filed publicly and those filed *in camera*, or confusing exhibit numbers, or in the transfer of this motion and those documents from one judicial officer to another on two successive occasions. [Dkt. # 124, at 1-2]. In other words, the fault lay with defense counsel's recently filed "Motion for a Protective Order" [Dkt. #124]. Counsel seeks to explain what had been filed back in March:

> Exhibits 1, 2, and 65 were publicly filed, respectively as Dockets 78-1, 78-2, and 78-3. The remaining exhibits were not publicly filed, and exhibits 5 through 62 were submitted for in camera review by Judge Durkin and transmitted to him in a box, which box was subsequently transferred to Judge Rowland and then to this Court's Chambers. Thus, the first document in the box was the first document that the Court was asked to review, which was Exhibit 5 to the Declaration of Marc Al.

3

Exhibit 5 consists of a 9-page lead document, AMTX-Urban 00000272-00000280 (an email chain), and the first attachment to that chain. Exhibits 6, 7, and 8 were further attachments to that email chain, as indicated in the Declaration of Marc A. Al (Docket 78) at paragraphs 14 through 17 and in the sixth column of the "chart" (Docket 85), and those exhibits should be reviewed in conjunction with the lead document, AMTX-Urban 00000272-00000280. Exhibits 9 and 10 were "stand-alone" documents, without a "lead" document. Exhibit 11 contained another lead document, to with an email (AMTX-Urban 0002321), with its first attachment (AMTX-Urban 0002322-0002327). Exhibit 12 (AMTX-Urban 0002328-0002371) was the second attachment to the email and should be reviewed in conjunction with the lead document, AMTX-Urban 0002321.

[Dkt. #124, at 1-2].

To disabuse counsel of any notion they might have that there was any confusion on the court's part over their submission, what defendants actually deposited for *in camera* review were, again, five large binders, each ranging from three to four inches thick: Exhibits 1-7 to Declaration of Marc A. Al, Exhibits 8-16 to Declaration of Marc A. Al, Exhibits 17-62 to Declaration of Marc A. Al, Exhibit 63 to Declaration of Marc A. Al, and Exhibits 64-65 to Declaration of Marc A. Al. Clearly, that's a world of difference from the two binders counsel have submitted now: 62 exhibits instead of 65; 570 pages instead of 2275. Documents can be mislaid, or misidentified, or misfiled, especially as complex litigation unfortunately may necessarily entail massive volumes of discovery. But, while even the best judges make mistakes, see, e.g., *Dietz v. Bouldin*, – U.S. –, –, 136 S. Ct. 1885, 1896 (2016)("All judges make mistakes. (Even us.)"); *In re City of Milwaukee*, 788 F.3d 717, 722 (7th Cir. 2015), no one is going to confuse a stack of five binders over a foot and a half high, and containing thousands of pages with a couple of binders no more than six inches high containing some 500 pages.

With the new, slimmed-down submission comes the required privilege log, no longer referred to as a mere "chart" as defense counsel had been doing previously. *See* Fed.R.Civ.P. 26(b)(5). *Sandra T.E. v. S. Berwyn Sch. Dist*. 100, 600 F.3d 612, 623 (7th Cir. 2010); *Monco v.*

*Zoltek Corp.*, 317 F. Supp. 3d 995, 1000 (N.D. Ill. 2018). The new privilege log has little in common with the old "chart." Right off the bat, in the original "chart," there was no entry, and hence no claim of privilege, for Exhibit 5, AMTX-Urban 00000272-280 [Dkt. #85, Page4/22]. Now, there is a claim that this document is not only privileged, but protected by the work product doctrine. [Dkt. #124, at Page 4/34]. As defendants have been withholding this document – redacting large portions of it, more accurately – for months without any claim of privilege, waiver is certainly an issue. *See, e.g., Surgery Ctr. at 900 N. Michigan Ave., LLC v. Am. Physicians Assurance Corp., Inc.*, 317 F.R.D. 620, 631 (N.D. Ill. 2016)("Arguably, they waived their claim of privilege as to these unidentified documents then and there."); *Rao v. Bd. of Trustees of the Univ. of Illinois*, 2016 WL 6124436, at *7 (N.D. Ill. Oct. 20, 2016)("A timely and adequate privilege log is required by the federal rules, and the failure to serve an adequate and timely privilege log may result in a waiver of any protection from discovery."); *Patrick v. City of Chicago*, 111 F.Supp.3d 909 (N.D. Ill. 2015); Buonauro v. City of Berwyn, 2011 WL 3754820, at *8 (N.D. Ill. Aug. 25, 2011)("A litigant cannot withhold documents after it is served with discovery requests based merely on its own decision that a privilege exists, and the failure to provide a privilege log can result in a waiver of the protection that would otherwise be available.").

Aside from that, a large number of claims of privilege have been withdrawn, leaving newly asserted claims of work product, Other claims, work product and/or privilege, have simply been withdrawn altogether. All this is by way of indicating to defense counsel what the court will be working from, in case other mistakes will be claimed to have been made, as changing claims from attorney-client privilege to work product is not ordinary, the two doctrines being readily distinguishable. *See, e.g., United States v. Nobles*, 422 U.S. 225, 238 (1975); *Appleton Papers, Inc.*

*v. E.P.A.*, 702 F.3d 1018, 1024 (7th Cir. 2012). They are not fungible, and a claim for one is not also a claim for the other. Now, in the main, defendants are asserting work product protection to al or nearly all of the withheld documents, and have abandoned many what were previously claims of attorney-client privilege as to those documents. The effect of this sudden *volte facie* remains to be seen.

That being said, plaintiffs may within 21 days, file a response brief to defendants' newly framed claims of privilege and/or work product set forth in the privilege log. [Dkt. # 124]. Within fifteen days thereafter, Defendants' reply brief, if any, will be due.

ENTERED: _____
UNITED STATES MAGISTRATE JUDGE

**DATE:** 11/21/19