## UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | |
|---|---|
| **URBAN 8 FOX LAKE CORPORA-TION, an Illinois corporation, and URBAN 8 ZION CORPORATION, an Illinois corporation,** | |
| **Plaintiffs,** | **No. 18 C 06109** |
| **v.** | **Judge Mary M. Rowland** |
| **NATIONWIDE AFFORDABLE HOUS-ING FUND 4, LLC, an Ohio limited liability company, SCDC, LLC, an Ohio limited liability company, and WENTWOOD CAPITAL ADVISORS, L.P., a Texas limited partnership,** | |
| **Defendants.** | |

## MEMORANDUM OPINION & ORDER

Before the Court are cross motions for summary judgment by Plaintiffs, Urban 8 Fox Lake Corporation and Urban 8 Zion Corporation ("Urban 8"), and Defendants, Nationwide Affordable Housing Fund 4, LLC ("Nationwide") and SCDC, LLC ("SCDC"). [55; 66] For the reasons set forth below, the Court grants Plaintiffs' motion for partial summary judgment [55] and denies Defendants' motion for partial summary judgment [66].

## BACKGROUND

**1. The LIHTC Program**

Because these limited partnerships were formed for the purpose of participating in the Low Income Housing Tax Credit ("LIHTC") program, we begin by describing the program.

The LIHTC program is a federal subsidy program designed to promote the construction and rehabilitation of affordable rental housing for low and moderate income households. 26 U.S.C. § 42 (2012). The program allocates tax credits to each State based on population; the States then allocate the tax credits to "qualified low-income housing projects." 26 U.S.C. § 42(g), (h)(3). "Qualified low-income housing projects" are residential rental properties that are rent-restricted and have a certain minimum share of rental units set aside for low and moderate income households. *Id.*

"The owners of these properties can claim these tax credits annually over a period of ten years, thereby offsetting their tax liability, but must continue to comply with rent affordability restrictions for a period of fifteen years, known as the compliance period, to avoid recapture of those credits." *Homeowner's Rehab, Inc. v. Related Corporate V SLP, L.P.,* 99 N.E.3d 741, 749 (Mass. 2018); 26 U.S.C. § 42(a), (c)(2), (f)(1), (i)(1), (j). For LIHTC projects allocated tax credits after 1989, the owner must agree to comply with the affordability restrictions for another fifteen years in addition to the first fifteen-year compliance period, so the affordability restrictions remain in place for a total of thirty years. U.S.C. § 42(h)(6).

Project developers frequently rely on the tax credits available under the LIHTC program as an incentive to attract capital from private investors. "Because these

projects rarely generate enough tax liability for the developers to claim the full value of the credits themselves … the tax credits are of little value to them." *Homeowner's Rehab,* 99 N.E.3d at 744. By syndicating the project, these developers can "sell" the tax credits to private investors—usually corporations with substantial and predictable tax liability—in exchange for an investment of equity in the project. *See* J. Khadduri, C. Climaco, & K. Burnett, United States Department of Housing and Urban Development, *What happens to Low-Income Housing Tax Credit Properties at Year 15 and Beyond?,* at 2 (2012).

In a typical LIHTC project, the property is owned by a limited partnership, formed solely for that purpose, in which the general partners hold only a nominal equity interest and the limited partners are private investors who hold almost all of the equity (ninety-nine percent or more). *Homeowner's Rehab,* 99 N.E.3d at 744 (citing Khadduri et al., *supra* at 11, 25). The general partner is responsible for the day-to-day management of the property. *Id.* "The investor limited partners contribute capital and, in return, are allocated the tax benefits flowing from the project, including the LIHTC tax credits, deductions for depreciation, and other tax losses." *Id.*

At the end of the first fifteen year compliance period, when all tax credits have been claimed and are no longer subject to recapture, most investor limited partners will seek to leave the project—usually by selling their interests to the general partner. *See* Khadduri et al., *supra* at 29-31.

## 2. The Parties' Dispute

The parties are partners in two limited partnerships created in 2000 to rehabilitate and operate an affordable housing development for elderly low-income residents in accordance with the LIHTC program and Section 42 of the Internal Revenue Code. 26 U.S.C. § 42 (2012); (Dkt. 59 ¶ 5-6, 14) These two limited partnerships are the Urban Zion Limited Partnership (the "Zion Partnership") and the Urban Fox Lake Limited Partnership (the "Fox Lake Partnership"; collectively referred to as the "Partnerships"). Plaintiff Urban 8 Zion Corporation is the General Partner of the Zion Partnership, and Plaintiff Urban 8 Fox Lake Corporation is the General Partner of the Fox Lake Partnership. (*Id.* ¶ 1-2) Nationwide and SCDC are Limited Partners in both Partnerships. (*Id.* at ¶ 7-8)

Plaintiffs, as the General Partners, have exercised their rights under the Partnership Agreements to purchase the Limited Partners' interests in the Partnership. (Dkt. 59 ¶ 25) The Partnership Agreements provide for such a sale and set forth the process to calculate the Purchase Price to be paid by the General Partners. (Dkt. 56 at 4) (citing Section 6.16 of the Partnership Agreements) At issue in this case is the calculation of the Purchase Price and the application of the Sale Preparation Fee under the Partnership Agreements. Plaintiffs contend that the Sale Preparation Fee should be credited towards the Purchase Price, while Defendants contend that it should not. Both Plaintiffs and Defendants seek partial summary judgment and a declaration confirming their interpretation of the Partnership Agreements.

## LEGAL STANDARD

Summary judgment should be granted when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). A genuine dispute as to any material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). The party seeking summary judgment has the burden of establishing that there is no genuine dispute as to any material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). In considering cross-motions for summary judgment, the Court must construe all inferences in favor of the party against whom the motion under consideration is made. *Allen v. City of Chi.*, 351 F.3d 306, 311 (7th Cir. 2003).

Summary judgment is a particularly appropriate mechanism for resolving cases involving the interpretation of written contracts. *International Union of United Auto., Aerosapce and Agric. Implement Workers of Am. v. Rockford Powertrain, Inc.*, 350 F.3d 698, 703 (7th Cir. 2003). "Because contracts are interpreted as a matter of law, claims that turn on the interpretation and construction of a contract, rather than on disputed material facts, are suitable for resolution on a motion for summary judgment." *W. Bend Mut. Ins. Co. v. Procaccio Painting & Drywall Co., Inc.*, 928 F. Supp. 2d. 976, 981 (N.D. Ill. 2013), aff'd on other grounds, 794 F.3d 666 (7th Cir. 2015) (citing *Kmart Corp. v. Footstar, Inc.*, No. 09 CV 3607, 2012 WL 1080262, at *12 (N.D. Ill. Mar. 30, 2012)).

<h1 align="center"><u>DISCUSSION</u></h1>

The parties agree on the material facts, but each party offers a different interpretation of the Partnership Agreements.

## 1. Contract Interpretation under Illinois Law

The Court applies Illinois law because that is where the suit was filed and because both parties have applied Illinois law. *See Ryerson Inc. v. Federal Ins. Co.*, 676 F.3d 610, 611-12 (7th Cir. 2012). In Illinois, courts interpret the meaning of unambiguous terms of a contract as a matter of law. *See Air Safety Inc. v. Teachers Realty Corp.*, 706 N.E.2d 882, 884 (Ill. 1999); *InsureOne Indep. Ins. Agency, LLC v. Hallberg*, 2012 IL App (1st) 092385, 976 N.E.2d 1014, 1037, 364 Ill. Dec. 451 (Ill. App. Ct. 2012). "Traditional principles of contract interpretation require a court, when construing a contract, to ascertain and give effect to the intent of the parties." *W.W. Vincent & Co. v. First Colony Life Ins. Co.*, 814 N.E.2d 960, 966 (Ill. App. Ct. 2004) (citing *Eichengreen v. Rollins, Inc.*, 757 N.E.2d 952 (Ill. App. Ct. 2001)). The starting point for the Court's analysis is "the language of the contract alone, as the language, given its plain and ordinary meaning, is the best indication of the parties' intent." *Gallagher v. Lenart*, 226 Ill. 2d 208, 874 N.E.2d 43, 50, 314 Ill. Dec. 133 (Ill. 2007); *see also Kallman v. Radioshack Corp.*, 315 F.2d 731, 735 (7th Cir. 2002) ("If the language of the contract unambiguously answers the question at issue, the inquiry is over.").

"When a dispute exists between the parties as to the meaning of a contract provision, the threshold issue is whether the contract is ambiguous." *Bright Horizons Children's Centers, LLC v. Riverway Midwest II, LLC*, 931 N.E.2d 780, 791 (Ill. App.

Ct. 2010). Traditionally, Illinois courts have adhered to the "four corners rule," looking only to the language of the contract to determine whether an ambiguity exists. *Air Safety*, 706 N.E.2d at 884. Under this rule, extrinsic evidence is only admissible to explain the terms of the contract if the Court first finds a provision ambiguous. *Id.*; *Lee v. Allstate Life Ins. Co.*, 838 N.E.2d 15, 24 (Ill. App. Ct. (2d Dist.) 2005) ("extrinsic evidence is admissible to explain the meaning of words in a contract only when there is an ambiguity or the words are susceptible of different interpretations."). A contract is ambiguous when it may be "susceptible to more than one meaning" or may be "obscure in meaning through indefiniteness of expression." *Bright Horizons Children's Centers*, 931 N.E.2d at 791. However, "[a] contract is not ambiguous…simply because the parties disagree on a provision's meaning." *Wolfensberger v. Eastwood*, 382 Ill. App. 3d 924, 889 N.E.2d 635, 321 Ill. Dec. 370 (Ill. App. Ct. 2008).

Neither party has identified any language in the Partnership Agreements that they contend is ambiguous. On the contrary, both parties agree that the Partnership Agreements are unambiguous and request that the Court exclude extrinsic evidence from its determination.[1] The Court agrees that the contract terms are unambiguous and thus declines to look outside the "four corners" of the Agreements.

## 2. The Partnership Agreements

Four provisions of the Partnership Agreements are at issue: Section 6.16 (providing Plaintiffs an option to purchase the Limited Partner's interests and stating

---

[1] Plaintiffs submitted declarations from David A. Davenport and Andrew W. Delman in support of their motion. (Dkt. 57; Dkt. 58)  In response, Defendants submitted declarations from Tami A. Holtz and Marc A. Al. (Dkt. 68; Dkt. 69) The Court is not considering the statements contained in these declarations in reaching its decision.

the Purchase Price); Section 6.17 (providing for the Sale Preparation Fee); Section 6.5H (providing for options to purchase Partnership interests); and Section 5.2.B (the "waterfall" provision relating to the distribution of Capital Transaction Proceeds).

Section 6.16 provides the General Partners with an option to purchase the interest of the Limited Partners. This Section states that the Purchase Price:

> shall be equal to the cash which would be distributed to the Limited Partners (other than the Class A Limited Partner) pursuant to Section 5.2.B if the Property were then sold to a third party for "Fair Market Value" at the time of the exercise of the Option (less reasonable expenses approved by the Special Limited Partner in connection with such sale and assuming that any applicable Sale Preparation Fee is paid in accordance with Section 5.2.B).

(Dkt. 26, Ex. 1 § 6.16) The parties agree that this provision requires the Partners to run the hypothetical sale through the "waterfall" provisions of Section 5.2.B in order to calculate the Purchase Price. (Dkt. 56 at 5)

The parties also agree that Section 5.2.B requires, at the twelfth tier of the waterfall,[2] that the parties deduct the Sale Preparation Fee from the Purchase Price. The Sale Preparation Fee is defined in Section 6.17—a fact neither party disputes. Section 6.17 provides:

> Upon any sale of the Property or any portion thereof, the Partnership shall pay a sale preparation fee to the Class A Limited Partner (the "Sale Preparation Fee"), in consideration of its services in arranging for and negotiating such sale, in an amount equal to a reasonable and customary real estate sales commission applicable to similar properties in the location of the Property at the time of such sale, not to exceed six percent (6%) of the gross sales price of the Property, as provided in Section 5.2.B … The Sale Preparation Fee shall be due and payable on a one-time basis only. *In addition, if the Class A Limited Partner (or an Affiliate*

---

[2] In the Fox Lake Partnership Agreement, the Sale Preparation Fee is deducted at the twelfth tier. In the Zion Partnership Agreement, the Sale Preparation Fee is deducted at the eleventh tier.

> *thereof) purchases the Property,* (or an interest therein pursuant to Section 6.16), *the Sale Preparation Fee shall be allowed as a credit to the Purchase Price.*

(Dkt. 26, Ex. 1 § 6.17) (emphasis added). The parties disagree, however, over the meaning of the italicized sentence.

Plaintiffs think it unambiguous that "if the [General Partner],[3] purchases the Property pursuant to Section 6.16, the Sale Preparation fee must *additionally* be credited to the Purchase Price." (Dkt. 56 at 6) (emphasis in original) In other words, the Sale Preparation Fee is deducted at the twelfth tier of the waterfall, and then if the General Partner is the purchaser, as is the case here, the Sale Preparation Fee is additionally applied as a credit against the Purchase Price. A sweetener built into the original Limited Partnership Agreements.

Defendants disagree with Plaintiffs' interpretation and insist that the Sale Preparation Fee is applied only once. Under Defendants' reading of these provisions, the Sale Preparation Fee is deducted at the twelfth tier of the waterfall only, and no additional credit is applied. Defendants make several arguments in support of their position.

First, Defendants argue that the Sale Preparation Fee is paid by the Partnership only, not by the Limited Partners or the General Partners. (Dkt. 71 at 7) Defendants cite to Section 6.17 which states: "Upon any sale of the Property or any portion thereof, *the Partnership* shall pay a sale preparation fee…" (Dkt. 26, Ex. 1 § 6.17) (emphasis added) According to Defendants, Plaintiffs' reading of an additional

---

[3] It is undisputed that the General Partners are affiliates of the Class A Limited Partner.

"credit" means either the General Partners or Limited Partners would be paying the Sale Preparation Fee. Thus, Defendants argue, Plaintiff's reading directly contradicts Section 6.17 of the Partnership Agreements. However, the Court reads Section 6.17 as unambiguously requiring the two transfers. Defendants are correct, the twelfth tier of the waterfall requires the Partnership to pay the Sale Preparation Fee for services rendered not to exceed 6%. Then, only if the purchaser is the General Partner, that same amount shall be credited again to the purchase price. Of course, this will necessarily be a credit by the seller in favor of the buyer, directly contrary to Defendants' argument.

Additionally, Defendants note that Section 6.17 provides that "[t]he Sale Preparation Fee shall be due on a one-time basis only." (*Id*.) Defendants thus contend that Plaintiffs' reading violates Section 6.17 by requiring the Sale Preparation Fee to be paid twice. (Dkt. 71 at 11) Plaintiffs counter that the Sale Preparation Fee is not paid twice, but is only paid once at the twelfth tier of the waterfall and then subsequently applied as a credit. Plaintiffs provide many examples illustrating the difference between a credit and a payment to demonstrate that the Sale Preparation Fee is not being "paid" twice. (Dkt. 72 at 11-12) The Court finds Plaintiffs' examples persuasive and agrees with Plaintiffs' reading.

Second, Defendants argue that, when the General Partner is the purchaser, a special provision is required to apply the Sale Preparation Fee. (Dkt. 71 at 10) Defendants note that the purpose of the Sale Preparation Fee is to compensate the Class A Limited Partner "in consideration of its services in arranging for and negotiating

[a] sale, in an amount equal to a reasonable and customary real estate sale commission…" (Dkt. 26, Ex. 1 § 6.17) Defendants further note: "where the General Partners purchase the Limited Partners' interests, no actual marketing or sale of the real estate occurs and the Class A Limited Partner provides no services for which it needs to be compensated." (Dkt. 71 at 10) According to Defendants, the first and second sentence of Section 6.17 do not provide for a payment of a Sale Preparation Fee when the General Partner is the purchaser. (*Id*.) But "[b]ecause the parties agreed that the [General Partner] is nevertheless to be paid its Sale Preparation Fee even if it renders no sale services, a special provision was required." (*Id*.) Defendants contend that the last sentence of Section 6.17 is the requisite special provision: "In addition, if the [General Partner] purchases the Property…the Sale Preparation Fee shall be allowed as a credit to the Purchase Price." (Dkt. 26, Ex. 1 § 6.17) Plaintiffs counter that even though no sale services are actually provided, the plain language instructs the parties to operate hypothetically, as though the Property had been sold. (Dkt. 72 at 9-10) And in the hypothetical sale, the parties would run the sale through the waterfall calculation contained in 5.2.B, including the Sale Preparation Fee. (*Id*.) The Court agrees. Defendants' argument does not account for the requirement that the hypothetical sale price be calculated via the waterfall calculation contained in Section 5.2.B and in the event the General Partner is the purchaser, the Sale Preparation Fee amount will be credited "in addition." Defendants' argument in this regard contradicts the plain language of the Partnership Agreements.

Third, Defendants argue that Plaintiffs' reading fails because "in addition" is used as an adverb that means "besides" in Section 6.17. (Dkt. 71 at 11) As mentioned above, Section 6.17 states, in pertinent part:

> … The Sale Preparation Fee shall be due and payable on a one-time basis only. *In addition,* if the Class A Limited Partner (or an Affiliate thereof) purchases the Property, (or an interest therein pursuant to Section 6.16), the Sale Preparation Fee shall be allowed as a credit to the Purchase Price.

(Dkt. 26, Ex. 1 § 6.17) (emphasis added) According to Defendants, in this context, the phrase "in addition" does not mean "over and above," as Plaintiffs suggest. Defendants argue that, in order for Plaintiffs' interpretation to be correct, Section 6.17 would require a prepositional phrase followed by an object. Defendants cite *Webster's Third New International Dictionary* (2002) to argue that "in addition" means "besides," whereas "in addition to" means "over and above." (Dkt. 71 at 11) Defendants contend that Plaintiffs' interpretation would only be correct if Section 6.17 read along the lines of "[i]n addition to *the Sale Preparation Fee payable by the Partnership as provided in Section 5.2.B,* the Sale Preparation Fee shall be allowed as a credit to the Purchase Price." (*Id.*) Plaintiffs respond that the Partnership Agreements' use of "in addition" is quite common, and that even if Defendants are correct, it does not change the result. "Whether it is read as 'in addition,' 'in addition to,' or 'besides,' the result is the same—a credit in the amount of the Sale Preparation Fee is to be applied to the Purchase Price separate and apart from other provisions." (Dkt. 72 at 13) The Court is unpersuaded by Defendants' arguments and agrees with Plaintiffs that the plain

reading of "in addition" in Section 6.17 provides for an additional credit in the amount of the Sale Preparation Fee.

Finally, Defendants argue that Plaintiffs' reading of Section 6.17 conflicts with Section 6.5H.[4] According to Defendants, Plaintiffs' reading would create "an entirely different scheme" if the General Partners purchase the interests of the Limited Partners pursuant to Section 6.16 during the Option Period than if the General Partners purchase the same interest later pursuant to Section 6.5H.[5] (Dkt. 71 at 12-13) Plaintiffs counter that this "entirely different scheme" is intentional, and that the Partnership Agreements purposefully permit a credit in one scenario but not another. "It makes sense to allow the credit if the General Partners exercise their Section 6.16 purchase option during the Option Period—the nine-month period after the expiration of the Compliance Period—but not if the General Partners decide to purchase the Limited Partners' interests later pursuant to Section 6.5H." (Dkt. 72 at 14) Plaintiffs claim that the Sale Preparation Fee credit "incentives the General Partners to exercise their Purchase Option," which is why it's present in one scenario and not

___

[4] At oral argument on April 16, 2019, Defendants argued that Plaintiffs reading of an additional credit would violate the economic substance doctrine and the "long-standing principle of tax law that limits the tax benefits attributable to property ownership—including tax credits—to the true owner of that property." *Homeowner's Rehab,* 99 N.E.3d at 754. Under this doctrine, an option to purchase property at a below market price is deemed a transfer of ownership that disqualifies the legal owner from the tax benefits. *Id.* Defendants argued that this could be the case if the Court adopted Plaintiffs' arguments. Defendants did not raise this argument in their brief and made only passing reference to it in their Response to Plaintiffs' Statement of Undisputed Facts. (Dkt. 70 at 6) The Court will not consider it here. *See Hernandez c. Cook Cnty. Sherriff's Office*, 634 F.3d 906, 913 (7th Cir. 2011) (arguments made for the first time at oral argument are waived so that opposing party is not prejudiced by being denied sufficient time to respond). Even if the Court were to consider the argument, it is it irrelevant to the plain meaning of the Partnership Agreements.

[5] Section 6.5H gives the General Partners an opportunity to purchase the Limited Partners' interests at a time other than the Option Period.

another. (*Id.*) Once again, the Court agrees with Plaintiffs, that is what the Agreements provide.

Based on the plain, unambiguous language of the Partnership Agreements, the Court finds that Plaintiffs are entitled to a credit towards their Purchase Price in the amount of the Sale Preparation Fee. The Court agrees with Plaintiffs' interpretation of the Partnership Agreements, and finds that the Sale Preparation Fee is subtracted once in the waterfall provision of Section 5.2.B, and subsequently credited towards the Purchase Price as contemplated in Section 6.17.[6] The Court is not persuaded by Defendants' arguments. It finds that the plain meaning of "in addition" in the context of Section 6.17 means "over and above" and not merely "besides." And regardless of whether there is a prepositional phrase following "in addition," the result stays the same—a credit is to be applied separate and apart from the other provisions. The Court is also not persuaded that the final sentence of Section 6.17 is merely a special provision for the General Partner, as that argument fails to account for the requirement that the hypothetical sale price be calculated via the waterfall calculation contained in Section 5.2.B. Nor does the Court agree that Plaintiffs' reading creates any internal inconsistencies. As Plaintiffs argue, "it makes sense" to allow for a credit in one scenario but not another, and regardless, that is what the plain text of the Partnership Agreements prescribes. (Dkt. 72 at 14) When read together, Sections 6.16, 6.17, and 5.2.B unambiguously indicate the original parties' intent to apply a credit

---

[6] The Court acknowledges that this accounting may be confusing, given that the adjustment and credit involve the same defined term and dollar amount. However, this is clearly provided for in the Partnership Agreements.

to the Purchase Price when the General Partners exercise their option to purchase the Limited Partners' interests.

<b><u>CONCLUSION</u></b>

For the reasons stated herein, the Court grants Plaintiffs' motion for partial summary judgment on Count IV [55] and denies Defendants' motion for partial summary judgment on Count IV [66].

E N T E R:

Dated: January 6, 2020

_____
MARY M. ROWLAND
United States District Judge